IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Case No. |
| ) | |
| v. ) | |
| ) | |
| KELVIN KAMARA, ) | |
| ) | |
| aka: KELVIN ONWUEGBUCHULAM OKOGBUA, ) | |
| aka: SAIDU MOHAMMED, ) | |
| ) | |
| Defendant. ) | |

AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Charles E. Price, II, having been duly sworn, hereby depose and say:

1. I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been so employed for over 19 years. While I have investigated a wide variety of crimes, I have spent the majority of my career investigating white collar crimes, including bank frauds, wire frauds, and money laundering.  I am currently assigned to a white collar crime squad at the FBI's Washington Field Office.  I am the Case Agent on an investigation into allegations that an individual is attempting to extort $2,000,000.00 from *The Christian Science Monitor* (CSM), in exchange for securing the release of Jill Carroll, a CSM reporter

who has been kidnaped in Iraq.

    2. The facts and information contained in this affidavit are based upon my personal knowledge as well as observations of other United States Government officials and government officials from the Federal Republic of Germany, who are involved in this investigation. All observations that were not personally made by me were related to me by the persons who made them or by representatives of those persons. This affidavit does not contain each and every fact known to the government, but only those necessary to support a finding of probable cause.

    3. This affidavit is made in support of a complaint charging KELVIN KAMARA, also known as (aka) KELVIN ONWUEGBUCHULAM OKOGBUA, aka SAIDU MOHAMMED, with violation of Title 18, United States Code, Sections 875 (foreign communications requesting ransom/reward for the release of a kidnaped person) and 1343 (wire fraud), based on his role in making false ransom demands to representatives of the *Christian Science Monitor* ("CSM") for the release of American journalist Jill Carroll ("Carroll"), who was recently abducted in Iraq.

### Case Facts and Results of American Investigation

    4. On January 7, 2006, gunmen in Iraq kidnaped Carroll, an American journalist working on assignment in Iraq for CSM. Since

her abduction, Carroll's abductors have released videos containing threats to kill her, including a threat to kill her if the United States did not meet their demands by Sunday, February 26, 2006.

   5. On February 12, 2006, David Cook ("Cook"), CSM's Washington Bureau Chief, received an e-mail from saidu_mhmmd@yahoo.com which states in part:

   "i can give you informations (sic) to secure the release of jill carroll, i am mujaheeden and i can give every information that can lead to securing her release .... i am impatiently waiting to read from you for further directives and negotiations....  saidu mohammed"

   6. Cook responded to Saidu Mohammed's ("Mohammed") e-mail and requested further details on steps he should take to secure Carroll's release.  Cook transmitted his response via an e-mail message which he sent to saidu_mhmmd@yahoo.com.

   7. On February 13, 2006, Cook received an e-mail message from saidu_mhmmd@yahoo.com which states, in part:

   "i need to have personal contact with you... give me your contact number...the intent is to kill jill so as to tell america we are not playing ... send me your number now so i can call you, i will be leaving for germany tomorrow ... i will be calling you from there and that will give me time to negotiate with you."

   8. Cook responded to Mohammed's e-mail and provided Mohammed with his work and cell phones.  Cook transmitted his response via an e-mail message which he sent to saidu_mhmmd@yahoo.com.

   9. On February 14, 2006, Cook received an e-mail message

from saidu_mhmmd@yahoo.com which states, in part:

"at the moment jills (sic) life is in serious danger so i had to abort my trip to germany ... jill is about to be smuggled to the mujaheeden camp in syria where she will undoubtedly be executed .. the plans (sic) is to kill her before the expiration of the deadline, but i am doing everything to ensure the decision is delayed...I spoke with jill .... she promised to assist me go (sic) with her to america if i help get her free ... so to ensure this i had to motivate two other brigades who must (sic) have to help me ... the other two brigades who are secretly working with me are demanding a ransom ... you can raise two million dollars or else jill is likely to become history, this is what the other two brigades are demanding in other (sic) to betray the mujaheeden.... we don't (sic) have much time left ... reply immediately so i know when this money will be available."

10. After receiving the e-mails from Mohammed, Cook contacted the FBI and counter-terrorism Agents began an investigation in an attempt to determine whether the person communicating with Cook was, in fact, in a position to assist in the release of Carroll.  The counter-terrorism Agents determined that the incoming e-mails were being sent from internet service provider ("ISP") addresses in Germany.  Pursuant to Title 18 United States Code, Section 2702 (b), the counter-terrorism Agents accessed the saidu_mhmmd@yahoo.com e-mail and determined that the user of this e-mail account was sending out multiple communications soliciting participation in what are commonly referred to as Nigerian advance fee schemes.

11.  Based on a review of the e-mails and the fact that the e-mails were being sent from Germany (versus Iraq, as Mohammed claimed), the counter-terrorism Agents came to the conclusion

that the individual communicating with Cook was not, in fact, associated with Carroll's kidnapers and was merely posing as one of Carroll's kidnapers in an attempt to extort money from CSN. Based on this conclusion, the counter-terrorism Agents stopped their investigation and on February 15, 2006, referred the case to me, as I investigate frauds.

    12. At my direction, Cook has had repeated contacts, via both e-mail and telephone, with the individual who has identified himself as Saidu Mohammed. The ostensible purpose of the contacts has been to negotiate a ransom to be paid to facilitate Carroll's release. The actual purpose of Cook's continued contact with Mohammed has been to develop evidence which would assist in determining the actual identity and location of the individual with whom Cook is communicating.

    13. With regard to venue, Cook has received some telephone calls from Mohammed while he (Cook) was in Washington, DC and technical coverage on some of the calls shows that the calls were placed from a Germany phone number. In addition, investigation has determined that Mohammed's e-mails originate from an ISP in Germany and some of the Mohammed's e-mails were received by Cook while he (Cook) was in Washington, DC.

    14. I have read all of the incoming emails which Cook received from Mohammed. I drafted all of the reply emails which Cook sent to Mohammed on or after February 15, 2006. All of the

incoming e-mails which Cook has received have come from saidu_mhmmd@yahoo.com and he has sent all of his e-mail responses to saidu_mhmmd@yahoo.com.

15.  Since Sunday February 19, 2006, I have consensually monitored all of Cook's telephone conversations with Mohammed and I have reviewed the recordings made of these telephone calls. The descriptions of the telephone calls provided below are based on my reviews.

16. In response to Mohammed's February 14, 2004, e-mail, Cook sent an e-mail to Mohammed offering to provide him $1,000,000.00 upon receipt of proof that Mohammed has access to Carroll and an additional $1,000,000.00 upon Carroll's release.

17.  On February 16, 2006, Cook received an e-mail message from saidu_mhmmd@yahoo.com which states, in part:

"because i sensed (sic) you do not trust me, and just to tell you i do not need this money ... i only needed (sic) this fund (sic) to settle two brigades who must help me sneak jill out on Sunday ... there is every possibility to sneak jill and drive her to the green zone on Sunday ... make consultation with whoever you have to so you could be able to transfer this money .. you have to assist me in doing this ... so i will be expecting to read from you and get to know when you will transfer the one million as you have proposed, there is need for absolute urgency as her life in in (sic) great danger now. saidu mohammed"

18.  On February 19, 2006, Cook received an e-mail message from saidu_mhmmd@yahoo.com which states, in part:

"i had to attend to the numerous assignment that brought me to germany ...i read your subsequent mails... i would have to leave with a midnight flight back to baghdad today ... i will be seeing jill tomorrow ... the mujaheeden intends to kill her

before the deadline ... i would suggest a transfer of this money tomorrow and by Wednesday jill will be in the hands of the american army. saidu mohammed"

19. On February 19, 2006, Cook received a telephone call from an individual who identified himself as "Saidu" and the following is a summary of a portion of the call (paraphrased): Saidu tells Cook that he has received Cook's email and sent an email in return. Saidu tells Cook that his (Saidu's) business in Germany is completed and that he is returning to Baghdad. Saidu says that there is absolutely no time left and that Cook has to send the money as fast as possible. Saidu tells Cook that he will provide Cook with an account number into which Cook can transfer the money. Saidu tells Cook the money will be used to pay two "brigades" who will assist him in freeing Carroll.

20. Cook, at my direction, attempted to persuade Saidu to attend a meeting, the stated purpose of which was to exchange $1,000,000.00 for proof that Saidu had access to Carroll and proof that she was still alive. The actual purpose of the meeting was to identify and arrest Saidu.

21. On February 19, 2006, Cook responded to Saidu's phone call with an e-mail in which he proposes to send his assistant to Frankfurt, Germany (a location Mohammed suggested in an earlier communication) with $1,000,000.00 which he would transfer to Mohammed after receiving proof that Carroll was still alive.

22. In subsequent consensually monitored phone calls Saidu

repeatedly calls Cook and attempts to convince Cook to transfer money to him prior to receiving proof from Saidu that Carroll is alive.

23. On February 20, 2006, Cook received a telephone call from an individual who identified himself as "Saidu" and the following is a summary of a portion of the call (paraphrased): Saidu identifies himself and tells Cook that he sent Cook an email. Saidu says that he will send an account number into which Cook should transfer the $1,000,000.00. Saidu says that Carroll is still alive.

24. On February 20, 2006, shortly after the preceding phone call, Cook sent an email to Mohammed which reads, in part:

> "Subject: Jill Carroll and Monday phone call ... As a show of my good faith and intentions, I am going to send my assistant to Frankfurt for the meeting you requested. He will have access to the $1,000,000 and will have my authority to release the money. However, I must insist that he be provided with some type of proof that Jill is still alive before he releases the money."

### Attempted Meeting In Germany and Subsequent Investigation by the Government of the Federal Republic of Germany ("Germany")

25. Based on the fact that Mohammed was communicating with Cook via IP addresses which were registered in Germany, the fact that he said he was in Germany, and the fact that he had proposed meeting in Frankfurt, a Letter Rogatory requesting the assistance of the German Government was obtained through the United States District Court for the District of Columbia. Based on the Letter

Rogatory and the underlying facts, German Government officials agreed to assist the FBI in its investigation and opened a separate investigation of their own into the attempted extortion of Cook and CSM.

26. After coordinating with German police officials, I traveled to Germany and, on February 24, 2004, posed as Cook's assistant in an attempt to arrange a face to face meeting with Mohammed. Prior to the meeting, the German police gave me a cell phone, number 017 366 705 18, (the "UC cell phone") which I was to use in communicating with Saidu. The German police were prepared to intercept and monitor all calls to this phone and they executed a trap and trace to determine the telephone numbers that were calling the UC cell phone.

27. On February 24, 2006, in an attempt to get Saidu to meet with me, Cook sent Saidu an e-mail which told him to meet me in a specific place in Germany and provided him with the telephone number of the UC cell phone. Cook told Mohammed that I would be able to transfer $1,000,000.00.

28. On February 24, 2006 Saidu called Cook and told Cook that he would attempt to contact me on my cellular phone (the UC cell phone). During this phone call Saidu said (paraphrased): I will try to reach your associate ... I have no time... Jill is in danger ... I will check the email and call your associate.

29. On February 24, 2006, Saidu failed to meet with me at

9

the designated time and place. However, on February 25, 2006, Saidu placed a telephone call to Cook in which he stated that he had been attempting to contact me on the UC cell phone but that no one was answering the phone. Saidu asked Cook to find out where I was so that Saidu could get in touch with me. The equipment which the FBI was using to monitor Cook's phone showed that, during this telephone call, Saidu was calling from the following number: 491706796692.

30. On February 26, 2006, Saidu placed another telephone call to Cook and he informed Cook that he had been attempting to contact me but that I was not answering the phone. The equipment which the FBI was using to monitor Cook's phone showed that, during this telephone call, Saidu was calling from the following number: 491706796692.

31. Based on the results of electronic monitoring of the UC cell phone, the German police determined that, during the period from February 24 through February 26, 2006 the UC cell phone received ten incoming phone calls from telephone 491706796692 (i.e., the same telephone number which was used to call Cook on February 25 and 26, 2006).

32. On March 3, 2006, the German police began electronic monitoring of telephone number 491706796692 (the "target cell phone"), which they determined to be a cellular phone located in Germany. Based on technical means, the German police determined

that the target cell phone was located in the area of Bernhardstr, in Muenster, Germany.

33. Based on overhears from the target cell phone and other investigation, the German police determined that KELVIN KAMARA (date of birth - February 20, 1979, place of birth - Monrovia, Liberia), aka KELVIN ONWUEGBUCHULAM OKOGBU (date of birth - February 20, 1977, place of birth - Nigeria), was the person using the target cell phone.

34. I gave the German police copies of recordings, made by the FBI, of the telephone conversations between "Saidu" and Cook. The German police compared these recordings to the recordings that they made of the person using the target cell phone. Based on a comparison of the voices, the Germans believe that the voice on conversations with Cook is the same voice as the person who is currently using the target cell phone.

35. Based on overhears from the target cell phone and other investigation, the German Police determined that KAMARA was living with Mary Abba, nee Ndubuisi, at an apartment located at Bernhardstrasse 5, Muenster 48153, Germany.

36. The German police determined, through a trace of IP addresses, that a computer in Abba's apartment was used to send an e-mail from saidu_mhmmd@yahoo.com to Cook.

37. Based on the results of their investigation, the German Police obtained an arrest warrant for KAMARA and a search warrant

11

for ABBA's apartment.

38. On Thursday, March 16, 2006, the German police arrested KAMARA at ABBA's apartment and seized KAMARA's cell phone. After seizing KAMARA's cell phone, the German police determined that the number to the phone is 491706796692 (i.e., the same number used to call Cook on February 25 and 26 and the same number used to place ten calls the UC cell phone).

**CONCLUSION**

24. Based upon foregoing, I believe probable cause exists to conclude that KELVIN KAMARA, aka KELVIN ONWUEGBUCHULAM OKOGBUA, aka SAIDU MOHAMMED has violated Title 18, United States Code, Sections 875 (foreign communications requesting ransom/reward for the release of a kidnaped person) and 1343 (wire fraud) and respectfully request the issuance of an arrest warrant charging him with those offenses.

_____
Charles E. Price, II
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
this \_\_\_\_\_ day of March, 2006.

_____
United States Magistrate Judge

```
docname: cms/arrestaff.wpd
3/16/06  1:25pm
```